Ruffin, Chief Justice.
 

 The Revised Statute, ch. 54, sec. 10, 11, requires guardians annually to exhibit accounts on oath of the estate of the children committed to their care; and directs that the Justices of the Court of Pleas and Quarter Sessions shall annually hold an Orphan’s Court, for the purpose of receiving and examining those accounts. By the 22d section, the Court may make proper orders respecting the guardian’s disbursements and expenses, and allow him commissions. From these provisions it is inferred by the counsel for the defendant, that the County Court is the proper tribunal to settle the commissions of a guardian; and it is insisted that the decision of that Court is conclusive, since it is obvious that a suit
 
 inter partes
 
 is not contemplated in the act.
 

 It would indeed be a subject of just regret, to find that the
 
 ex parte
 
 order of any judicial body had been made, by an act of the Legislature, conclusive on those whose interests were injuriously affected by it. It is so contrary to the general course of legislation in this State, as to render such a construction inadmissible, unless the words be peremptory. We think there is no such legislative intention upon the subject before us.
 

 This is not a case in which the order is conclusive, because it is the act of a Court of exclusive jurisdiction. The jurisdiction of the County Court, upon the subject of commissions to guardians, is not exclusive. It is placed, in the act, on the same footing with the power to charge a guardian, or to make any other allowance to him; and the Court of Equity has always exercised jurisdiction between guardian and ward, in relation to their accounts generally. Indeed, the very act of concludes with a saving of‘‘the power of the Court of
 
 *139
 
 Chancery, in any matter or thing relating to orphans or their estates.” In a suit in that Court against the guardian for an account, it has never been known that the guardian was sent to the County Court for an allowance; but it has always been made, in the first instance, in the Court of Equity.
 

 The Walton vs. |at, ai^(faa’(1 approved,
 

 Guardian a County at^^been6 i>lea4ed in Equity,
 

 But, generally speaking, every act of a Court of competent, though not exclusive jurisdiction, is final in law; and , ’ . . . . , n . .... therefore, it is said, this order is not re-examinabie in any other Court. We admit that this Court cannot review order and correct it, as an appellate Court might. We cannot address ourselves to the County Court, as an inferior tribunal, on this occasion. But, at the instance of one party, in an adversary suit before us, we can control the other party from making an injurious use of an
 
 ex parte
 
 order for an excessive allowance, obtained from the County Court by surprise. In
 
 Walton
 
 vs.
 
 Avery,
 
 2 Dev. & Bat. Eq. 405, we held, that to be a sufficient ground for entertaining a similar suit between next of kin and administrators; and a guardian stands, we think, precisely on the same ground. The argument drawn from the constitution of the Orphan’s Court by the act, as to the conclusiveness of the order of that Court, goes too far. The act directs the same Court
 
 “
 
 to examine into all accounts of guardians so exhibited to them;” and it might, thence, with like reason be inferred, that if the Orphan’s Court passed an account
 
 ex parte,
 
 the ward would be concluded by the account as there stated. But such a supposition has never been before advanced. The great purpose of the act was, to make the guardian furnish evidence against himself, as well to enable the Court to see, from year to year, whether he was wastingor improving the estate, and, therefore, whether he ought to be removed or continued, as also to supply the ward with ready proof on the final settlement. But the guardian’s accounts, although passed by the Court, have never been pleaded as a bar to the bill of the ward for a general account. They would be evidence, least to some extent, that the Court, for instance, approved of disbursements for the ward’s education, as suitable to his degree and estate, and the like. But if it be alleged that the disbursements were not in fact made, or that the guardian did
 
 *140
 
 not charge himself with all the estate he did receive or might have received, his accounts, and the orders on them, have never been considered as protecting him. The reason is plain why they should not be so considered. From the ve« nature of an
 
 ex parte
 
 proceeding, an omission or unjust ah°wance is evidence of surprize or imposition on the Court, "When, therefore, the ward calls the guardian to account, in the Court of Equity, that Court must put such
 
 ex parte
 
 proofCeeding aside, at least so far as an improper use of it is sought; for js one of the established grounds of its jurisdiction to re- °
 
 0
 
 lieve against surprise as well as fraud. On this principle we should hold the ward not to be concluded; and that he is now, with both parties before a Court, at liberty to show that an unreasonable commission was claimed and allowed.
 

 partero
 
 ceeding, an aiTúnjus't evidence surprise or imposition on the c0Ult-
 

 As in this count of dSburse-d fcefoi-e th? court,- the order ‘"il** lowing “'ust be attributprise or unence
 
 mf'm
 
 mofioiT
 

 But in this case it is manife’st that the order was, in a legaj sense, obtained by surprize. It was made in January, and gives five per cent, on the receipts and disbursements, without any account having ever been returned or even ma^® by the guardian. There were no means before the Court of forming a proper judgment; and hence the order °
 
 *
 
 must be attributed to surprize or undue influence on an
 
 ex Parte motion.
 

 "With respect to the rate of commission, we have no hesitation in giving our opinion that it is excessive. In estimating wbat is proper, it is assumed that the defendant was a comPetent and faithful guardian, and that he has fully accounted for the estate of his wards, except only the small sum of $35, being part of the rent? of 1839, which, by mistake, was omitted in the account stated by the Committee, and except also the sum involved in this controversy respecting commissions. In other respects, the accounts seem to be correct; and the bill states no other ground of complaint. But, with. these admissions in favor of the defendant, we yet think-that an unreasonable allowance was made for his services, as they are stated by himself in his answer.
 

 The defendant was guardian about six years only. He received the estate, chiefly in good bonds, from the administrators of the father and grandfather of his wards, without litigation or difficulty of any sort. The administrators, by an
 
 *141
 
 arrangement with him, took the bonds payable to him as guardian; which was a great convenience to both parties, an accommodation to the
 
 debtors,
 
 and probably
 
 the
 
 means
 
 of
 
 securing debts for the wards, which would have been lost, if sued for. On those bonds the defendant collected only the sum of $3,735 94 for interest; and then resigned his office, and paid over to the husband of one of the wards and the second guardian of the other three, the satire bonds, on which there was then due the sum of $17,235 71 for interest accrued thereon while the defendant held them. It is not imputed to the defendant as a fault or an error, that he suffered the interest to accumulate; for as the debts drew compound interest legally, the wards did not suffer loss thereby. But the facts are in themselves material in estimating the comraission, since
 
 that is to be
 
 a compensation for the time and trouble of the defendant in managing the plaintiffs’ estate, From them we see, that almost for nothing more than holding the bonds belonging to his wards for six years, and ascertaining, in an agricultural community, that the debtors and their sureties continued solvent, and stating his account nally, and handing over those very bonds, the defendant claimed and was allowed five per cent, on the sum of $90,-312 75, amounting to $4,515 61, or upwards of $750 salary
 
 per annum,
 
 over and above all his expenses. We should fear, if we sustained this allowance, that hereafter the instances would be more frequent than even now, in which the offices of administrator and guardian would be undertaken solely with the view to render them places of profit, in the nature of a regular employment, instead of fiom those motives which ought to actuate those who assume them. The emolument of the guardian, we are sure, was not the object of the Legislature; but only a mere compensation for time and trouble. That seems to us to have been much exceeded in this case.
 

 Commisonly acómth^guar-10 d.¡an f°>- his time and trouble itt
 

 Besides, we think the allowance wrong in principle for another reason. It is the largest that can be made to any guardian, and ought, therefore, only to be made when the highest is merited; where the management of the estate or the ward has been long and troublesome, and the guardian
 
 *142
 
 has completed his duties. We need not say that the court ' is restricted to allow but five per cent, to all the guardians of the same minor. Possibly there may be cases, in which the office was troublesome, and the guardian faithful, and died or gave up the oflS.ce upon some necessity, and yet the court may give to the former guardian a full commission, and also reasonable compensation to the successor. • But the case ought to be remarkable in its circumstances, to justify such a proceeding. In the case here, the defendant voluntarily relinquished the office in the midst of its duties, when three out of four of his wards were still infants, requiring guardians. To make a full allowance to him would manifestly encourage guardians, not to perform the duties of their office, but to retire from them. It is true that a guardian may not, like an executor, be required to execute the office, until all its duties shall have been completed; yet
 
 it]
 
 after undertaking to manage the estate, and superintend the education of an orphan, he be inclined to stop half way; he- ought to be satisfied with being permitted to stop, without claiming, also, all the compensation he could have had, if he had worked on to the end. The ward ought not unnecessarily to be taxed with commission after commission on the capital of the estate, as one guardian may resign after another. If the remuneration of the first guardian be not measured, so as to leave something for his successor, either no second guardian can be procured, or the ward must pay twice, or oftener,. for what the law meant he should pay but once.
 

 Upon the whole, therefore, and taking the services of the-defendant to be as detailed in the answer, we think two and an half
 
 per
 
 centum, or one half the allowance in the County Court, to Wit, the sumj of $2,257 801 cts., both an adequate and liberal compensation, for the time, trouble, and responsibility of the defendant, and there must be a decree accord;ingly, and for the omitted sum of $35 and the costs.
 

 Per Curiam. Decree for the plaintiffs accordingly.